**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARLOS SANCHEZ, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE STONEHOUSE REST LLC and PETER BOTROS, in his individual and professional capacities,<br><br>Defendants. | Civil Case No.: 1:18-cv-01397<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Carlos Sanchez, on behalf of himself and others similarly situated, by and through his attorneys, Faruqi & Faruqi, LLP, hereby alleges as follows against Defendants The StoneHouse Rest LLC and Peter Botros (collectively, "Defendants"):

**NATURE OF THE CLAIMS**

1. Mr. Sanchez, on behalf of himself and all other similarly situated persons employed by Defendants at any time during the full statute of limitations period, brings this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the New York Labor Law, N.Y. Lab. Law §§ 190, *et seq.* ("NYLL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL").

2. Defendants own and operate a restaurant and party venue in Staten Island, New York called the Stone House at Clove Lakes ("Stone House" or the "Restaurant").

3. Defendants engage in a company-wide, willful and deliberate policy and practice of failing to compensate Plaintiff and other similarly situated employees at the minimum and overtime wage rates required by law.

4.      Specifically, Defendants consistently pay their employees a small portion of their total hours worked "on the books" and pay employees for their remaining hours worked "off the books," or in cash, at a rate of approximately $3.00 or $3.50 per hour.

5.      Regardless of their hourly rate, Stone House employees are ***never*** paid overtime compensation.

6.      Defendants also routinely fail to pay employees on their regularly scheduled pay days, instead paying them several days after their wages are due.

7.      Moreover, Defendants fail to provide their employees with Notices of Pay Rate and accurate wage statements, as required by law.

8.      What is more, Defendants discriminate against the large portion of their employees who are undocumented immigrants by paying them less than their co-workers who are United States citizens or nationals.

9.      Specifically, Defendants pay an even greater portion of undocumented employees' wages "off the books" at a rate of roughly one-quarter of the State minimum wage rate.

10.     Finally, Defendants have also discriminated and retaliated against Mr. Sanchez individually by firing him immediately after he complained to Defendants about their company-wide unlawful wage practices and asked for a month off from work to heal from injuries he sustained after being hit by a car.

11.     Plaintiff's claims against Defendants to redress these wrongs are brought, in part, under the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), and applicable regulations thereunder, on behalf of himself and all other similarly situated Restaurant Employees (defined *infra* at ¶ 33) employed by Defendants at any time during the full statute of limitations period.

12. Plaintiff's claims are also brought, in part, under the NYLL, and applicable regulations thereunder, as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves and all other similarly situated Restaurant Employees (defined *infra* at ¶ 33) employed by Defendants at any time during the full statute of limitations period.

13. Plaintiff's claims are also brought, in part, under the NYCHRL as a class action, pursuant to FRCP 23, on behalf of himself and all other similarly situated Restaurant Employees (defined *infra* at ¶ 34) who were employed by Defendants and were not United States citizens or nationals at any time during the full statute of limitations period.

14. Lastly, Plaintiff also brings claims individually under the FLSA, NYLL, New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"), and the Family and Medical Leave Act, 29 U.S.C §§ 2601, *et seq.* ("FMLA"), and applicable regulations thereunder.

**JURISDICTION AND VENUE**

15. Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA and the FMLA.

16. The Court also has supplemental jurisdiction over Plaintiff's related claims arising under State and/or City law pursuant to 28 U.S.C. § 1367.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district.

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Defendants' principal place of business is located in this district.

**ADMINISTRATIVE PREREQUISITES**

19. Shortly after the filing of this Class and Collective Action Complaint, Plaintiff will

file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, discrimination in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq*. (the "ADA").

20. Within 90 days of receiving a Notice of Right to Sue from the EEOC, Plaintiff will seek leave of the Court to file an Amended Complaint adding, *inter alia*, a Cause of Action for violations of the ADA.

21. Any and all other prerequisites to the filing of this action have been met.

## PARTIES

### A. Plaintiff Carlos Sanchez

22. Plaintiff Carlos Sanchez is a resident of New York City and was employed by Defendants from on or around December 2014 through on or around December 18, 2017.

23. At all relevant times, Carlos Sanchez was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

### B. Defendant The StoneHouse Rest LLC

24. Defendant The StoneHouse Rest LLC is a domestic limited liability company with its principal place of business located at 1150 Clove Road, Staten Island, New York 10301.

25. At all relevant times, The StoneHouse Rest LLC was an "employer" within the meaning of all applicable statutes and regulations.

### C. Defendant Peter Botros

26. Defendant Peter Botros is the owner of Stone House and a resident of the State of New York.

27. At all relevant times, Peter Botros controlled and directed the terms of employment and compensation of Plaintiff and all similarly situated persons.

28. At all relevant times, Peter Botros maintained and exercised his power to hire, fire, discipline, and promote Plaintiff and all similarly situated persons.

29. At all relevant times, Peter Botros maintained control, oversight, and direction of Plaintiff and all similarly situated persons, including timekeeping, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

30. At all relevant times, Peter Botros was an "employer" within the meaning of all applicable statutes and regulations.

## FACTS

### A. Background

31. Defendants own and operate Stone House, a restaurant and party venue in Staten Island, New York.

32. At any given time, Defendants employ a staff of approximately 45 employees at Stone House.

33. Defendants' employees hold various titles, including, *inter alia*: (i) Cook; (ii) Server; (iii) Busser; (iv) Bartender; (v) Barback; (vi) Host; and (vii) Runner (collectively, "Restaurant Employees").

34. Restaurant Employees typically work between 45 and 80 hours per week.

### B. Failure to Pay Minimum and Overtime Wages

35. Defendants engage in a company-wide pattern and practice of deliberately denying Restaurant Employees minimum and overtime wages owed.

36. Defendants systematically deny Restaurant Employees minimum and overtime wages in several ways.

37. First, Defendants pay all Restaurant Employees partially "off the books."

38. Specifically, for all Restaurant Employees who are documented United States citizens or nationals, Defendants have a common policy of paying them "on the books" via check, with pay stubs, for only their first approximately 30 to 40 hours worked each week.

39. For their remaining hours worked each week, these Restaurant Employees are paid "off the books" in cash, at a rate of approximately $3.50 per hour.

40. Moreover, for all Restaurant Employees who are ***not*** United States citizens or nationals, Defendants have a common policy of paying them "on the books" via check, with pay stubs, for only their first approximately 20 to 30 hours worked each week.

41. For their remaining hours worked each week, these Restaurant Employees are paid, "off the books" in cash, at a rate of approximately $3.00 per hour.

42. This company-wide unlawful compensation scheme is communicated to Restaurant Employees by Mr. Botros directly.

43. Defendants' practice results in Restaurant Employees being paid well below the federal and State minimum wage rates for as many as 80 hours in a given week.

44. Second, Defendants do not pay any of their Restaurant Employees at a rate of one and one-half times either their "on the books" or their "off the books" rates.

45. In other words, Defendants completely deny Restaurant Employees, who often work as many as 80 hours in a week, any overtime compensation ***at all***.

**C. <u>Late Payment of Wages</u>**

46. Defendants do not offer to mail paychecks to Restaurant Employees and do not pay them via direct deposit.

47.     Instead, Restaurant Employees are required to pick up their paychecks at the Restaurant.

48.     Restaurant Employees' pay periods cover a 14-day timeframe spanning from Monday to Sunday.

49.     Defendants have designated the following Thursday as the Restaurant Employees' regularly scheduled pay day.

50.     However, Defendants routinely fail to make Restaurant Employees' paychecks available until several days after their regularly scheduled pay day.

**D.      Failure to Provide Notices of Pay Rate and Accurate Wage Statements**

51.     The NYLL requires that Defendants provide the Restaurant Employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer [ ];  the name of the employer;  any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer;  plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

52.     Throughout, the statutory period, Defendants have never provided any of the Restaurant Employees with a Notice of Pay Rate.

53.     The NYLL also requires that Defendants issue or provide the Restaurant Employees access to accurate wage statements with each payment of wages.

54. Throughout the statutory period, Defendants have never provided any of their Restaurant Employees with access to accurate wage statements.

55. By way of example only, because of Defendants' common policy of paying their Restaurant Employees partially "off the books," the wage statements provided to all Restaurant Employees never reflect the accurate number of hours that the Restaurant Employees actually worked each pay period.

**E. Discrimination Based on Alienage and Citizenship Status**

56. Defendants engage in a deliberate, company-wide, pattern and practice of discriminating against Restaurant Employees who are not citizens or nationals of the United States by paying them less than Restaurant Employees who are United States citizens or nationals.

57. Indeed, undocumented immigrants comprise a large portion of Defendants' workforce.

58. Defendants systematically discriminate against these Restaurant Employees in their compensation by paying them a greater portion of their hours worked "off the books" at a rate of approximately $3.00 per hour, based on their alienage or citizenship status.

59. Conversely, Defendants pay Restaurant Employees who are United States citizens or nationals for a greater portion of their hours worked "on the books" at a rate of approximately $7.50 per hour to $14.50 per hour.

60. The discriminatory nature of Defendants' compensation practices is further revealed by the fact that Defendants consistently increase Restaurant Employees' hours worked "on the books" following proof of United States citizenship.

**F. <u>Plaintiff Carlos Sanchez</u>**

**i. Background**

61. Carlos Sanchez worked at Stone House as a Cook from on or around December 2014 through on or around December 18, 2017.

62. Throughout his employment at Defendants, Mr. Sanchez generally worked between 50 and 80 hours per week.

63. From the date of his hire until approximately October 2017, Mr. Sanchez was not an United States citizen or national and did not have proper immigration documentation.

64. In or around October 2017, Mr. Sanchez became a United States citizen.

**ii. Wage Violations**

65. At the outset of Mr. Sanchez's employment at Stone House, Mr. Botros informed Mr. Sanchez that Defendants would pay him for his first 23 to 25 hours worked "on the books" at a regular rate of pay of $14.00 to $14.50 per hour.

66. Mr. Botros further informed Mr. Sanchez that, for his remaining hours worked, he would be paid "off the books" in cash, at a rate of $3.00 per hour.

67. This resulted in Mr. Sanchez being paid well below the federal and State minimum wage rates for as many as 80 hours in a given week.

68. Regardless of whether he was being paid at the "on the books" rate or the "off the books" rate, Mr. Sanchez was ***never*** paid one and one-half times his regular rate of pay for any hours worked in excess of 40 hours in a workweek.

69. By way of example only, attached hereto as Exhibit A is a copy of Mr. Sanchez's time card from Stone House, which shows his recorded hours worked from March 21, 2016 through March 27, 2016.

70.     As reflected in Exhibit A, Mr. Sanchez worked 70.37 hours during this period.

71.     Attached hereto as Exhibit B is a copy of another one of Mr. Sanchez's time cards from Stone House, which shows his recorded hours worked during the following week, from March 28, 2016 through April 3, 2016.

72.     As reflected in Exhibit B, Mr. Sanchez worked 63.97 hours during this period.

73.     Together, Exhibits A and B show that Mr. Sanchez worked 134.34 hours from March 21, 2016 through April 3, 2016.

74.     Attached hereto as Exhibit C is Mr. Sanchez's wage statement for the pay period spanning from March 21, 2016 through April 3, 2016.

75.     As reflected in Exhibit C, Defendants paid Mr. Sanchez "on the books," at his regular rate of pay of $14.00 per hour, for only 50 hours worked, between March 21, 2016 and April 3, 2016, despite the fact that Mr. Sanchez worked 134.34 during this same pay period.

76.     Mr. Sanchez was paid for his remaining 84.34 hours worked during this pay period, in cash, at a rate of approximately $3.00 per hour.

77.     In other words, Defendants paid Mr. Sanchez at an hourly rate of $6.91 during the week of March 21, 2016 through March 27, 2016 and at an hourly rate of $7.30 during the week of March 28, 2016 through April 3, 2016.

78.     Indeed, Mr. Sanchez was paid considerably below his regular rate of pay of $14.00 per hour and also well below both the state and federal minimum wages.

79.     Moreover, Defendants paid Mr. Sanchez no overtime whatsoever during any portion of this pay period.

80.     In fact, despite regularly working approximately 50-80 hours per week, Mr. Sanchez was never paid any overtime compensation at all.

81.    Mr. Sanchez has had numerous conversations with several other Restaurant Employees, throughout the relevant time period, and all of them have confirmed that they were paid in exactly the same manner as Mr. Sanchez was.

82.    Defendants never offered to mail Mr. Sanchez his paycheck or allow him to be paid via direct deposit.

83.    Instead, Mr. Sanchez was always required to pick up his paychecks at the Restaurant.

84.    Throughout the statutory period, Mr. Sanchez was paid in pay periods spanning a 14-day timeframe from Monday to Sunday.

85.    Defendants designated the following Thursday as the Mr. Sanchez's regularly scheduled pay day.

86.    However, Defendants often failed to make Mr. Sanchez's paychecks available until several days after his regularly scheduled pay day.

87.    Mr. Sanchez has spoken to several other Restaurant Employees who have similarly not received their paychecks until after their regularly scheduled pay days.

88.    Defendants never provided Mr. Sanchez with a Notice of Pay Rate.

89.    Through his conversations with other Restaurant Employees, Mr. Sanchez has learned that no one at the Restaurant had ever received a Notice of Pay Rate.

90.    Defendants never provided Mr. Sanchez with accurate wage statements.

91.    On numerous occasions, Mr. Sanchez had personally seen the wage statements of other Restaurant Employees and has confirmed that these statements are never accurate and never accurately reflect the actual number of hours that the Restaurant Employees work.

**iii. Alienage and Citizenship Status Discrimination**

92. From the date of his hire until in or around October 2017, Mr. Sanchez was not a United States citizen or national.

93. During this time, Defendants consistently paid him "on the books" for only his first 20 to 25 hours worked.

94. During this time, all of Mr. Sanchez's hours worked in excess of 20 to 25 hours per week were paid "off the books," in cash, at a rate of $3.00 per hour.

95. When Mr. Sanchez obtained his citizenship in approximately October 2017, he provided proof of citizenship to Defendants.

96. At this time, Mr. Botros informed Mr. Sanchez that Defendants would increase Mr. Sanchez's compensation because he had become a United States citizen.

97. Specifically, from approximately October 2017 through Mr. Sanchez's termination, Defendants paid him "on the books" for his first 40 hours worked, as opposed to only for his first 20 to 25 hours worked.

98. Additionally, during this time, all of Mr. Sanchez's hours worked in excess of 40 hours in a work week were paid "off the books," in cash, at a rate of $3.50 per hour, as opposed to the $3.00 per hour "off the books" rate he was paid prior to obtaining his citizenship.'

99. Mr. Sanchez is aware of dozens of Restaurant Employees who have worked for Defendants during his tenure at Stone House and were not United States citizens or nationals, all of whom were and/or are paid wages in the same manner as he was paid prior to obtaining his citizenship in October 2017.

**iv. Disability Discrimination and FMLA Interference**

100. On or around May 30, 2017, Mr. Sanchez was hit by a car while walking on the

street.

101.    Mr. Sanchez sustained severe injuries to his knees.

102.    Following the accident, Mr. Sanchez contacted Mr. Botros to request a brief leave of absence from work due to his injuries.

103.    Mr. Botros denied Mr. Sanchez's request and demanded that he report to work for his next scheduled shift, irrespective of his injury.

104.    Specifically, Mr. Botros threatened to fire Mr. Sanchez if he did not report to work.

105.    Accordingly, Mr. Sanchez had no choice but to report to work for his next shift.

106.    Needless to say, returning to work immediately following the accident was extremely painful for Mr. Sanchez.

107.    Approximately three days after the accident, Mr. Sanchez began to cough up blood on the job, seemingly as a result of continuing to work after the injury.

108.    Still, Defendants required that Mr. Sanchez continue to work his normal hours.

109.    From the date of his injury until approximately mid-October 2017, Mr. Sanchez continued to work through the pain, apart from taking approximately two weeks of unpaid leave in or around September 2017.

110.    In mid-October 2017, Mr. Sanchez visited a doctor regarding the increasing pain he was feeling in his knees following the accident.

111.    The doctor insisted that Mr. Sanchez undergo a bilateral knee operation.

112.    Mr. Sanchez underwent surgery on or around October 18, 2017 and was instructed by his doctor to remain out of work until at least Thanksgiving 2017.

113.    Accordingly, following surgery, notified Defendants that he would not return to work until Thanksgiving 2017, and Defendants approved the leave of absence.

114. Mr. Sanchez returned to work on or around Thanksgiving 2017 and continued to work for Defendants up until mid-December 2017.

115. On December 18, 2017, Mr. Sanchez visited his doctor, who instructed Mr. Sanchez to take an additional month of leave to further recover from surgery and gave him a note reflecting this instruction.

116. Shortly thereafter, Mr. Sanchez presented the note to Mr. Botros and requested to take a leave of absence until January 15, 2018.

117. During this same conversation, Mr. Sanchez complained to Mr. Botros regarding the Defendants' unlawful wage practices, including the practice of paying him "off the books" at a rate lower than the minimum wage as well as never paying him or other Restaurant Employees overtime.

118. Immediately following Mr. Sanchez's request for leave in connection with his medical condition and his protected complaint regarding Defendants' wage practices, Mr. Botros informed Mr. Sanchez that he was no longer needed at the Restaurant, thereby terminating Mr. Sanchez's employment.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

119. Plaintiff brings this action, in part, as a collective action under the FLSA and applicable regulations thereunder.

120. Plaintiff seeks to maintain claims, pursuant to FLSA § 216(b), on behalf of himself and all other Restaurant Employees who have been employed by Defendants at any time during the full statute of limitations period (the "FLSA Collective").

121. At all relevant times, Plaintiff and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common

policies, plans, and scheme, and were subject to Defendants' practices of: (i) failing to compensate Plaintiff and the FLSA Collective at the federal minimum wage for all hours worked under 40 hours in a workweek; (ii) failing to compensate Plaintiff and the FLSA Collective at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; and (iii) failing to timely pay wages owed.

122.    Throughout the full statute of limitations period, Defendants have been fully aware of the duties performed by Plaintiff and the FLSA Collective, and that those duties were not exempt from the provisions of the FLSA.

123.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiff and the FLSA Collective.

124.    As a result of Defendants' conduct, they are liable to Plaintiff and the FLSA Collective for the full amount of their unpaid wages, with interest, an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiff and the FLSA Collective.

125.    While the exact number of the FLSA Collective is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are approximately 125 other similarly situated persons who were employed by Defendants during the full statute of limitations period.

126.    Plaintiff is currently unaware of the identities of the members of the FLSA Collective.

127.    Accordingly, Defendants should be required to provide Plaintiff with a list of all persons employed by Defendants during the full statute of limitations period, along with their last

known addresses, telephone numbers, and email addresses, so Plaintiff can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

## CLASS ACTION ALLEGATIONS – NYLL

128. Plaintiff also brings this action, in part, as a class action under the NYLL and applicable regulations thereunder.

### A. Class Definition

129. Plaintiff seek to maintain claims, pursuant to FRCP 23, on behalf of himself and a class of all other Restaurant Employees who have been employed by Defendants during the full statute of limitations period (the "NYLL Class").

130. Plaintiff alleges, on behalf of himself and the NYLL Class, that Defendants violated, *inter alia*, the NYLL by: (i) failing to compensate Plaintiff and the NYLL Class at the State minimum wage for all hours worked under 40 hours in a workweek; (ii) failing to compensate Plaintiff and the NYLL Class at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; (iii) failing to compensate Plaintiff and the NYLL Class at their established regular rates of pay; (iv) failing to timely pay wages owed; (v) failing to provide Notices of Pay Rate; and (vi) failing to provide accurate wage statements.

131. Plaintiff and the NYLL Class have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

132. The wage practices described in this Class and Collective Action Complaint are part of Defendants' normal course of conduct.

133. The claims brought pursuant to the NYLL may be pursued by all similarly situated persons who do not opt out of the NYLL Class, pursuant to FRCP 23.

**B.      Numerosity and Impracticability of Joinder**

134.    The members of the NYLL Class are so numerous that joinder of all members is impracticable.

135.    While the exact number of the members of the NYLL Class is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are approximately 250 members of the NYLL Class.

136.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**C.      Common Questions of Law and Fact**

137.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the NYLL Class and predominate over any questions only affecting the members of the NYLL Class individually.

138.    Indeed, there are few, if any, purely individual issues in this action.

139.    The questions of law and fact that are common to Plaintiff and the NYLL Class include, but are not limited to:

(a)      Whether Plaintiff and the NYLL Class worked over 40 hours per week;

(b)      Whether Defendants failed to pay Plaintiff and the NYLL Class all minimum wages owed to them;

(c)      Whether Defendants failed to pay Plaintiff and the NYLL Class all overtime compensation owed to them;

(d)      Whether Defendants failed to pay Plaintiff and the NYLL all wages owed;

(e)      Whether Defendants failed to timely pay Plaintiff and the NYLL their wages owed;

(f) Whether Defendants failed to provide Plaintiff and the NYLL Class with Notices of Pay Rate;

(g) Whether Defendants failed to provide accurate wage statements to Plaintiff and the NYLL Class; and

(h) Whether Plaintiff and the NYLL Class are entitled to liquidated damages and injunctive relief.

140. Therefore, the common question requirement of FRCP 23(a) is satisfied.

**D. <u>Typicality of Claims and Relief Sought</u>**

141. Plaintiff's claims are typical of the claims of the members of the NYLL Class he seeks to represent.

142. Plaintiff and the NYLL Class work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

143. The wage practices suffered by Plaintiff, and the damages resulting therefrom, are sadly typical of Defendants' treatment of their Restaurant Employees generally, and of the NYLL Class specifically.

144. Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**E. <u>Adequacy of Representation</u>**

145. Plaintiff will fairly and adequately protect the interests of the NYLL Class because his interests are coextensive and aligned with those of the members of the NYLL Class.

146. Plaintiff has no interests adverse to the NYLL Class he seeks to represent and has retained competent and experienced counsel.

147. Plaintiff is willing and able to represent the NYLL Class as fairly and vigorously as he pursues his similar individual claims.

148.     Plaintiff has retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the demands necessary to litigate a class action of this size and complexity.

149.     The combined interests, experience, and resources of Plaintiff and his counsel to competently litigate the individual and NYLL Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**F.     Requirements of Rule 23(b)(1)**

150.     Without certification of the NYLL Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

151.     Accordingly, certification of the NYLL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the NYLL Class, and Defendants.

152.     By filing this Class and Collective Action Complaint, Plaintiff is preserving the rights of the NYLL Class with respect to the statute of limitations on their claims.

153.     Therefore, not certifying a class would substantially impair and/or impede the remaining members of the NYLL Class' ability to protect their interests.

**G.     Requirements of Rule 23(b)(2)**

154.     Defendants acted on grounds, described herein, generally applicable to Plaintiff and the NYLL Class by denying Plaintiff and the NYLL Class minimum and overtime wages, failing to pay wages on time, and failing to provide Notice of Pay Rate and accurate wage statements.

155.     These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiff and the NYLL Class as a whole.

156. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, minimum and overtime wages, timely payment of wages, Notices of Pay Rate, and accurate wage statements.

157. Declaratory and injunctive relief are the factual and legal predicates for Plaintiff and the NYLL Class' entitlement to monetary and non-monetary remedies for such wage violations.

158. Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**H. Requirements of Rule 23(b)(3)**

159. The common issues of fact and law affecting Plaintiff's claims and those of the NYLL Class – including, without limitation, the common issues identified in the paragraphs above – predominate over issues affecting only individual claims.

160. A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's claims and the claims of the NYLL Class.

161. The cost of proving Defendants' pattern and practice of denying minimum, overtime, and other wages makes it impractical for the members of the NYLL Class to pursue their claims individually.

162. This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the NYLL Class (they must have worked for Defendants as Restaurant Employees during the statutory period), as well as the common questions of law and fact described herein.

## CLASS ACTION ALLEGATIONS – NYCHRL

163. Plaintiff also bring this action, in part, as a class action under the NYCHRL.

### A. Class Definition

164. Plaintiff seeks to maintain claims, pursuant to FRCP 23, on behalf of himself and a class of all other Restaurant Employees who worked for Defendants and were not United States citizens or nationals any time during the full statute of limitations period (the "NYCHRL Class").

165. Plaintiff alleges on behalf of himself and the NYCHRL Class that Defendants violated, *inter alia*, the NYCHRL by discriminating against Restaurant Employees who were not United States citizens or nationals in the terms and conditions of their employment, including, without limitation, compensation, based on their alienage or citizenship status.

166. Plaintiff and the NYCHRL Class have standing to seek such relief because of the adverse effects that Defendants' employment practices have had on them individually and as a group.

167. The employment practices described in this Class and Collective Action Complaint are part of Defendants' normal course of conduct.

168. The claims brought pursuant to the NYCHRL may be pursued by all similarly situated persons who do not opt out of the NYCHRL Class, pursuant to FRCP 23.

### B. Numerosity and Impracticability of Joinder

169. The members of the NYCHRL Class are so numerous that joinder of all members is impracticable.

170. While the exact number of the members of the NYCHRL Class are unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are approximately one-hundred and fifty (150) members of the NYCHRL Class.

171. Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**C. <u>Common Questions of Law and Fact</u>**

172. Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the NYCHRL Class and predominate over any questions only affecting the members of the NYCHRL Class individually.

173. Indeed, there are few, if any, purely individual issues in this action.

174. The questions of law and fact that are common to Plaintiff and the NYCHRL Class include, but are not limited to:

(a) Whether Defendants compensated Plaintiff and the NYCHRL Class less than their peers who were United States citizens or nationals;

(b) Whether Defendants compensated Plaintiff and the NYCHRL Class less than their peers who were United States citizens or nationals based on their alienage or citizenship status;

(c) Whether Plaintiff and the NYCHRL Class are entitled to compensatory damages; and

(d) Whether Plaintiff and the NYCHRL Class are entitled to punitive damages and injunctive relief.

175. Therefore, the common question requirement of FRCP 23(a) is satisfied.

**D. <u>Typicality of Claims and Relief Sought</u>**

176. Plaintiff's claims are typical of the claims of the members of the NYCHRL Class he seeks to represent.

177. Plaintiff and the members of the NYCHRL Class work, or have worked, for Defendants and are, or were, subject to the same employment policies and practices.

178.    Plaintiff and the NYCHRL Class allege that they were each subjected to unlawful discrimination in the terms and conditions of their employment, including, without limitation, compensation.

179.    The discriminatory employment practices suffered by Plaintiff, and the damages resulting therefrom, are sadly typical of Defendants' treatment of Restaurant Employees who are not United States citizens or nationals generally, and of the NYCHRL Class specifically.

180.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**E.    Adequacy of Representation**

181.    Plaintiff will fairly and adequately protect the interests of the NYCHRL Class because his interests are coextensive and aligned with those of the members of the NYCHRL Class.

182.    Plaintiff has no interests adverse to the NYCHRL Class he seeks to represent and has retained competent and experienced counsel.

183.    Plaintiff is willing and able to represent the NYCHRL Class as fairly and vigorously as he pursues his similar individual claims.

184.    Plaintiff has retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the demands necessary to litigate a class action of this size and complexity.

185.    The combined interests, experience, and resources of Plaintiff and his counsel to competently litigate the individual and NYCHRL Class at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**F.    Requirements of Rule 23(b)(1)**

186.    Without certification of the NYCHRL Class, the same evidence and issues would

be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

187.    Accordingly, certification of the NYCHRL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the NYCHRL Class, and Defendants.

188.    By filing this Class and Collective Action Complaint, Plaintiff is preserving the rights of the NYCHRL Class with respect to the statute of limitations on their claims.

189.    Therefore, not certifying a class would substantially impair and/or impede the remaining members of the NYCHRL Class' ability to protect their interests.

**G.     Requirements of Rule 23(b)(2)**

190.    Defendants acted on grounds, described herein, generally applicable to Plaintiff and the NYCHRL Class by discriminating against Plaintiff and the NYCHRL Class in the terms and conditions of their employment, including, without limitation, compensation.

191.    These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiff and the NYCHRL Class as a whole.

192.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding Defendants' discriminatory practices with respect to the Plaintiff and the NYCHRL Class.

193.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiff and the NYCHRL Class' entitlement to monetary and non-monetary remedies for the unlawful employment practices alleged herein.

194.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**H. Requirements of Rule 23(b)(3)**

195. The common issues of fact and law affecting Plaintiff's claims and those of the NYCHRL Class, including, without limitation, the common issues identified in the paragraphs above, predominate over issues affecting only individual claims.

196. A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's claims and the claims of the NYCHRL Class.

197. The cost of proving Defendants' pattern and practice of discriminating against Restaurant Employees who are not United States citizens or nationals makes it impractical for the members of the NYCHRL Class to pursue their claims individually.

198. The class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the NYCHRL Class (they must have worked for Defendants as Restaurant Employees and lacked status as United States citizens or nationals during the statute of limitations period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY MINIMUM WAGE**
***(On Behalf of the FLSA Collective)***

199. Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

200. During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

201. The FLSA requires covered employers, including Defendants, to compensate Restaurant Employees at a rate not less than the federal minimum wage for all hours worked under 40 hours in a workweek.

202. Plaintiff and the FLSA Collective were not exempt from the requirement that their

employer pay them minimum wages under the FLSA, and they are entitled to be paid minimum wages by Defendant for all hours worked under 40 hours in a workweek during the full statute of limitations period.

203. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked under 40 hours in a workweek.

204. As a result of Defendants' failure to compensate Plaintiff and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked under 40 hours in a workweek, Defendants have violated the FLSA.

205. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA and/or applicable regulations thereunder.

206. Defendants' violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME**
***(On Behalf of the FLSA Collective)***

207. Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

208. During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

209. The FLSA requires covered employers, including Defendants, to compensate Restaurant Employees at a rate not less one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

210. Plaintiff and the FLSA Collective were not exempt from the requirement that their employer pay them overtime under the FLSA, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

211. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the FLSA Collective at a rate not less one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

212. As a result of Defendants' failure to compensate Plaintiff and the FLSA Collective at a rate not less one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

213. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA.

214. Defendants' violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIIOLATIONS OF THE FLSA: LATE PAYMENT OF WAGES**
***(On Behalf of the FLSA Collective)***

215. Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

216. During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

217. The FLSA requires covered employers, including Defendants, to pay Restaurant

Employees all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

218. Plaintiff and the FLSA Collective were not exempt from the requirement that their employer timely pay them their wages.

219. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiff and the FLSA Collective all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

220. As a result of Defendants' failure to pay Plaintiff and the FLSA Collective all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends, Defendants have violated the FLSA and/or applicable regulations thereunder.

221. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA.

222. Defendants' violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE**
***(On Behalf of the NYLL Class)***

223. Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

224. During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

225. The NYLL requires covered employers, including Defendants, to compensate Restaurant Employees at a rate not less than the State minimum wage for all hours worked under

40 hours in a workweek.

226. Plaintiff and the NYLL Class were not exempt from the requirement that their employer pay them minimum wages under the NYLL, and they are entitled to be paid minimum wages by Defendants for all hours worked under 40 hours in a workweek during the full statute of limitations period.

227. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the NYLL Class at a rate not less than the State minimum wage for all hours worked under 40 hours in a workweek.

228. As a result of Defendants' failure to compensate Plaintiff and the NYLL Class at a rate not less than the State minimum wage for all hours worked under 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

229. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL.

230. Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME**
***(On Behalf of the NYLL Class)***

231. Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

232. During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

233. The NYLL requires covered employers, including Defendants, to compensate

Restaurant Employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

234. Plaintiff and the NYLL Class were not exempt from the requirement that their employer pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

235. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the NYLL Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

236. As a result of Defendants' failure to compensate Plaintiff and the NYLL Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

237. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL.

238. Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED
***(On Behalf of the NYLL Class)***

239. Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

240. During the full statutory period, Plaintiff and the NYLL Class were protected by

the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

241.   The NYLL requires covered employers, including Defendants, to compensate Restaurant Employees at their established regular rates of pay for all hours worked under 40 in a workweek and one and one-half times their established regular rates of pay for all hours worked in excess of 40 in a workweek.

242.   Plaintiff and the NYLL Class were not exempt from the requirement and are entitled to be paid by the Defendants at their established regular rates of pay for all hours worked under 40 in a workweek and one and one-half times their established regular rates of pay for all hours worked in excess of 40 in a workweek, during the full statute of limitations period.

243.   Throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of paying Plaintiff and the NYLL Class at their established regular rates of pay for only their "on the books" hours worked.

244.   Throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of failing to pay Plaintiff and the NYLL Class at their established regular rates of pay for all their "off the books" hours worked.

245.   Likewise, throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of failing to pay Plaintiff and the NYLL Class at one and one-half times their established regular rates of pay for all hours worked in excess of 40 in a workweek.

246.   As a result of Defendants' failure to compensate Plaintiff and the NYLL Class at their established regular rates of pay (or one-half times their established regular rates) for all hours worked, Defendants have violated the NYLL and/or applicable regulations thereunder.

247. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL.

248. Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**VIIOLATIONS OF THE NYLL: LATE PAYMENT OF WAGES**
***(On Behalf of the NYLL Class)***

249. Plaintiff, on behalf of himself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

250. During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

251. The NYLL requires covered employers, including Defendants, to pay Restaurant Employees all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

252. Plaintiff and the NYLL Class were not exempt from the requirement that their employer timely pay them their wages.

253. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiff and the NYLL Class all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

254. As a result of Defendants' failure to pay Plaintiff and the NYLL Class all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends, Defendants have violated the NYLL and/or applicable regulations thereunder.

255. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL.

256. Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: NOTICES OF PAY RATE**
***(On Behalf of the NYLL Class)***

257. Plaintiff, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

258. During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

259. The NYLL requires covered employers, including Defendants, to provide Restaurant Employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

260. Plaintiff and the NYLL Class were not exempt from the requirement that their employer provide them with Notices of Pay Rate.

261. Throughout the full statute of limitations period, Defendants have engaged in a

policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiff and the NYLL Class.

262. As a result of Defendants' failure to provide Notices of Pay Rate to Plaintiff and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

263. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiff and the NYLL Class in accordance with the NYLL.

264. Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover $50 for each work day the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**NINTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: INACCURATE WAGE STATEMENTS**
***(On Behalf of the NYLL Class)***

265. Plaintiff, on behalf of himself and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

266. During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq*., and 650, *et seq*., as well as all applicable regulations thereunder.

267. The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

268. Plaintiff and the NYLL Class were not exempt from the requirement that their

employer provide them with proper wage statements.

269. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide accurate wage statements.

270. As a result of Defendants' failure to furnish accurate wage statements to Plaintiff and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

271. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper wage statements to Plaintiff and the NYLL Class in accordance with the NYLL.

272. Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover $250 for each work day the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**TENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYCHRL: DISCRIMINATION BASED ON CITIZENSHIP**
***(On Behalf of the NYCHRL Class)***

273. Plaintiff, on behalf of himself and the NYCHRL Class, hereby repeats and reallege the foregoing allegations as if set forth fully herein.

274. During the full statutory period, Plaintiff and the NYCHRL Class were protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq*. and all applicable regulations thereunder.

275. By the actions described above, among others, Defendants have discriminated against Plaintiff and the NYCHRL Class on the basis of their alienage or citizenship status in violation of the NYCHRL by denying them the same terms and conditions of employment available to Restaurant Employees who are United States citizens or nationals including, *inter alia*, compensation.

276. As a direct and proximate result of Defendants' unlawful discriminatory conduct in

violation of the NYCHRL, Plaintiff and the NYCHRL Class have suffered, and continue to suffer, monetary and/or economic harm for which they are entitled to an award of damages.

277. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff and the NYCHRL Class have suffered, and continue to suffer, emotional distress for which they are entitled to an award of compensatory damages.

278. Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff and the NYCHRL Class's rights under the NYCHRL, for which Plaintiff and the NYCHRL Class are entitled to an award of punitive damages.

279. Plaintiff and the NYCHRL Class are further entitled to an award of reasonable attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE FMLA: INTERFERENCE
***(On Behalf of Plaintiff Carlos Sanchez Individually)***

280. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

281. During the full statutory period, Plaintiff was protected by the provisions of the FMLA, 29 U.S.C §§ 2601, *et seq*., and applicable regulations thereunder.

282. Specifically, Plaintiff was a full-time employee of Defendants and, at all relevant times, worked at least 1,250 hours in any 12-month period, including the 12-month period preceding his termination.

283. By the actions described above, among others, Defendants have unlawfully interfered with, restrained, and/or denied the exercise of Plaintiff's rights by, *inter alia*, terminating his employment immediately after he requested FMLA-qualifying.

284. As a direct and proximate result of Defendants' unlawful interference in violation

of the FMLA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages.

285. Plaintiff is further entitled to an award of liquidated damages, prejudgment interest, and attorneys' fees and costs.

**TWELFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYSHRL: DISABILITY DISCRIMINATION**
***(On Behalf of Plaintiff Carlos Sanchez Individually)***

286. Plaintiff hereby repeats and reallege the foregoing allegations as if set forth fully herein.

287. During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*

288. As described above, Defendants were aware that Plaintiff suffered from a recognized disability.

289. By the actions described above, among others, Defendants have discriminated against Plaintiff on the basis of his disability by, *inter alia*, terminating his employment.

290. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continue to suffer, monetary and/or economic harm for which he is entitled to an award of damages.

291. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continue to suffer, emotional distress for which he is entitled to an award of compensatory damages.

292. Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

293. Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

**THIRTEENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYCHRL: DISABILITY DISCRIMINATION**
***(On Behalf of Plaintiff Carlos Sanchez Individually)***

294. Plaintiff hereby repeats and reallege the foregoing allegations as if set forth fully herein.

295. During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq*.

296. As described above, Defendants were aware that Plaintiff suffered from a recognized disability.

297. By the actions described above, among others, Defendants have discriminated against Plaintiff on the basis of his disability by, *inter alia*, terminating his employment.

298. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continue to suffer, monetary and/or economic harm for which he is entitled to an award of damages.

299. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continue to suffer, emotional distress for which he is entitled to an award of compensatory damages.

300. Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

301. Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

**FOURTEENTH CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: RETALIATION**
***(On Behalf of Plaintiff Carlos Sanchez Individually)***

302. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

303. During the full statutory period, Plaintiff was protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

304. As set forth above, Plaintiff complained to Defendants regarding Defendants' violations of the FLSA.

305. Defendants retaliated against Plaintiff for his protected activity by, *inter alia*, by terminating his employment immediately following his complaint.

306. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages.

307. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, emotional distress for which he is entitled to an award of compensatory damages.

308. Defendants' unlawful and retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the FLSA, for which Plaintiff is entitled to an award of punitive damages.

309. Plaintiff is further entitled to an award of liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FIFTEENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: RETALIATION**
***(On Behalf of Plaintiff Carlos Sanchez Individually)***

310. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

311. During the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

312. As set forth above, Plaintiff complained to Defendants regarding Defendants' violations of the NYLL.

313. Defendants retaliated against Plaintiff for his protected activity by, *inter alia*, by terminating his employment immediately following his complaint.

314. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages.

315. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, emotional distress for which he is entitled to an award of compensatory damages.

316. Defendants' unlawful and retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYLL, for which Plaintiff is entitled to an award of liquidated damages.

317. Plaintiff is further entitled to an award of liquidated damages, prejudgment interest, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, the FLSA Collective, the NYLL Class, and the NYCHRL Class, respectfully requests that this Court:

A. Declare that the practices complained of herein are unlawful under applicable federal and State law;

B. Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.      Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiff with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.      Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiff with a list of all members of the NYLL Class and the NYCHRL Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

E.      Designate Plaintiff Carlos Sanchez as the representative of the NYLL Class and the NYCHRL Class, and his counsel of record as class counsel;

F.      Determine the damages sustained by Plaintiff and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiff and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

G.      Determine the damages sustained by Plaintiff and the NYLL Class as a result of Defendant's violations of the NYLL, and award those damages against Defendants and in favor of Plaintiff and the NYLL Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.      Determine the damages sustained by Plaintiff and the NYCHRL Class as a result of Defendant's violations of the NYCHRL, and award those damages against Defendants and in

favor of Plaintiff and the NYCHRL Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

I. Award Plaintiff, the FLSA Collective, and the NYLL Class an additional equal amount as liquidated damages because Defendants' violations were willful and/or without a good faith basis;

J. Award Plaintiff and the NYCHRL Class an additional amount as punitive damages because Defendants' violations were willful and/or without a good faith basis;

K. Award Plaintiff, the FLSA Collective, the NYLL Class, and the NYCHRL Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

L. Grant Plaintiff, the FLSA Collective, the NYLL Class, and/or the NYCHRL Class such other and further relief that the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself, the FLSA Collective, the NYLL Class, and the NYCHRL Class, hereby demands trial by jury on all issues of fact and damages.

Dated: March 6, 2018

**FARUQI & FARUQI, LLP**

By: *_/s/ Innessa Melamed Huot_*
Innessa Melamed Huot
Alex J. Hartzband

685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
ihuot@faruqilaw.com
ahartzband@faruqilaw.com

*Attorneys for Plaintiff and the Proposed FLSA Collective, NYLL Class, and NYCHRL Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARLOS SANCHEZ, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE STONEHOUSE REST LLC and PETER BOTROS, in his individual and professional capacities,<br><br>Defendants. | Civil Case No.:<br><br>**CONSENT TO SUE** |

I was employed by Defendants and am the named Plaintiff in the above-entitled action, *Sanchez v. The Stonehouse Rest LLC, et al.*, pending in the United States District Court for the Eastern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): Carlos Pablo Sanchez Juarez

Signature: [signature]

Date: 03-05-18